UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. MARK A. BARNETT, CHIEF JUDGE

------------------------------------------------------------------x
FIT FOR LIFE LLC,                                  :
                                                   :
                                Plaintiff,         :
                                                   :
                    v.                             :        Court No. 20-00004
                                                   :
UNITED STATES,                                     :
                                                   :
                                Defendant.         :
                                                   :
------------------------------------------------------------------x

## <u>ORDER</u>

Upon consideration of defendant's cross-motion for summary judgment and response in opposition to plaintiff's motion for summary judgment, and upon consideration of all other papers and proceedings had herein; it is hereby

**ORDERED** that defendant's cross-motion for summary judgment is granted; and it is further

**ORDERED** that plaintiff's motion for summary judgment is denied; and it is further

**ORDERED** that judgment is entered for defendant and this action is dismissed.

                                    _____
                                         JUDGE MARK A. BARNETT

Dated: _____
           New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. MARK A. BARNETT, CHIEF JUDGE

```
-------------------------------------------------------------x
FIT FOR LIFE LLC,                          :
                                           :
                         Plaintiff,        :
                                           :
              v.                           :        Court No. 20-00004
                                           :
UNITED STATES,                             :
                                           :
                         Defendant.        :
                                           :
-------------------------------------------------------------x
```

**DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Rules of the United States Court of International Trade (USCIT), defendant, the United States, respectfully moves for an Order: (1) granting defendant's cross-motion for summary judgment by finding that the merchandise at issue in this litigation is classifiable as determined by U.S. Customs and Border Protection; (2) denying plaintiff's motion for summary judgment; and (3) dismissing this action in its entirety.  The bases for defendant's cross-motion are set forth in the accompanying memorandum, defendant's response to plaintiff's USCIT Rule 56.3 statement of facts not in dispute, and defendant's USCIT Rule 56.3 statement of undisputed material facts.

WHEREFORE, defendant respectfully requests that an order be entered granting defendant's cross-motion for summary judgment, denying plaintiff's motion for summary judgment, entering judgment for defendant, dismissing this action, and granting defendant such other and further relief as may be just and appropriate.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:  /s/ Aimee Lee
AIMEE LEE
Assistant Director
International Trade Field Office

Of Counsel:
Sohom Datta
Senior Attorney
Office of the Assistant Chief Counsel,
International Trade Litigation
U.S. Customs and Border Protection

/s/ Guy Eddon
GUY EDDON
Senior Trial Attorney
International Trade Field Office
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-9230 or 9236
*Attorneys for Defendant*

Dated:  August 11, 2026

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. MARK A. BARNETT, CHIEF JUDGE

-----------------------------------------------------------------x

FIT FOR LIFE LLC,                              :
                                               :
                        Plaintiff,             :
                                               :
            v.                                 :        Court No. 20-00004
                                               :
UNITED STATES,                                 :
                                               :
                        Defendant.             :
                                               :
-----------------------------------------------------------------x

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS CROSS-MOTION FOR
SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION TO PLAINTIFF'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

AIMEE LEE
Assistant Director
International Trade Field Office

Of Counsel:
Sohom Datta                             GUY EDDON
Senior Attorney                         Senior Trial Attorney
Office of the Assistant Chief Counsel,  International Trade Field Office
International Trade Litigation           Department of Justice, Civil Division
U.S. Customs and Border Protection      Commercial Litigation Branch
                                        26 Federal Plaza, Room 346
                                        New York, New York 10278
                                        (212) 264-9230 or 9236
                                        *Attorneys for Defendant*

Dated:  August 11, 2026

## TABLE OF CONTENTS

BACKGROUND AND FACTS ........................................................................................... 1

SUMMARY OF ARGUMENT .......................................................................................... 3

ARGUMENT ..................................................................................................................... 4

   I.   Standard Of Review ................................................................................................ 4

     A.  Motions for Summary Judgment .................................................................... 4

     B.  The Standards For Classification .................................................................... 5

  II.   CBP Correctly Classified the Subject Merchandise as General Exercise Equipment ....... 7

     A.  Applying The *Carborundum* Factors To The Subject Merchandise Supports Its Classification As Exercise Equipment Under Heading 9506 .......................................... 11

     B.  Applying GRI 3 In The Alternative, The Balance Ball Chair Is Properly Classified In Heading 9506 ......................................................................................................... 16

     C.  The Government's Position is Consistent with Longstanding Administrative Precedent ........................................................................................................ 19

 III.   The Balance Ball Chair Is Not Classifiable As A Seat Under Heading 9401 ................. 21

CONCLUSION ................................................................................................................. 23

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.N. Deringer, Inc. v. U.S.*,
  66 Cust. Ct. 378 (Cust. Ct. 1971)...................................................................... 18

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)........................................................................................... 4

*Aromont USA, Inc. v. United States*,
  671 F.3d 1310 (Fed. Cir. 2012) ....................................................................... 10

*Automatic Plastic Molding, Inc., v. United States*,
  26 CIT 1201 (2002) .......................................................................................... 10

*Bausch & Lomb, Inc. v. United States*,
  148 F.3d 1363 (Fed. Cir. 1998)...................................................................... 4, 5

*Carl Zeiss, Inc. v. United States*,
  195 F.3d 1375 (Fed. Cir. 1999)..................................................................... 6, 16

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)........................................................................................... 5

*Chevron U.S.A. Inc. v. Mobil Producing Texas & New Mexico*,
  281 F.3d 1249 (Fed. Cir. 2002)......................................................................... 4

*Clarendon Marketing, Inc. v. United States*,
  144 F.3d 1464 (Fed. Cir. 1998).......................................................................... 5

*Deckers Outdoor Corp. v. United States*,
  714 F.3d 1363 (Fed. Cir. 2013).......................................................................... 5

*Degussa Corp. v. United States*,
  508 F.3d 1044 (Fed. Cir. 2007).......................................................................... 6

*Ero Indus., Inc. v. United States*,
  24 CIT 1175, 118 F. Supp. 2d 1356 (2000) ....................................................... 5

*Faus Group, Inc. v. United States*,
  581 F.3d 1369 (Fed. Cir. 2009)........................................................................ 16

ii

*Home Depot USA, Inc. v. United States*,
 427 F. Supp. 2d 1278 (Ct. Int'l Trade 2006)
 491 F.3d 1334 (Fed. Cir. 2007), *remanded*,
 435 F.Supp.3d 1311 (Ct. Int'l Trade 2020) ............................................................. 18

*Jarvis Clark Co. v. United States*,
 733 F.2d 873 (Fed. Cir. 1984), *pet. for rehearing denied*,
 739 F.2d 628 (Fed. Cir. 1984).......................................................................... 6, 7

*Jayre California, Inc. v. United States*,
 14 CIT 29 (1990) .................................................................................................. 4

*Lynteq, Inc. v. United States*,
 976 F.2d 693 (Fed. Cir. 1992)............................................................................... 6

*Mita Copystar Am. v. United States*,
 21 F.3d 1079 (Fed. Cir. 1994)............................................................................... 6

*Motorola, Inc. v. United States*,
 436 F.3d 1357 (Fed. Cir. 2006).............................................................................. 6

*Nidec Corp. v. United States,*
 68 F.3d 1333 (Fed. Cir. 1995).............................................................................. 17

*Orlando Food Corp. v. United States*,
 140 F.3d 1437 (Fed. Cir. 1998)......................................................................... 5, 16

*Phone-Mate, Inc. v. United States*,
 690 F. Supp. 1048 (Ct. Int'l Trade 1988) .............................................................. 4

*Pillowtex Corp. v. United States*,
 171 F.3d 1370 (Fed. Cir. 1999)............................................................................. 5

*Pomeroy Collection, Ltd. v. United States*,
 246 F. Supp. 2d 1286 (Ct. Int'l Trade 2002), *aff'd*...................................................... 5
 336 F.3d 1370 (Fed. Cir. 2003)............................................................................. 5

*Pomeroy Collection, Ltd. v. United States*,
 559 F. Supp. 2d 1374 (Ct. Int'l Trade 2008) .......................................................... 5

*Rocknel Fastener, Inc. v. United States*,
 267 F.3d 1354 (Fed. Cir. 2001)............................................................................. 6

*Sports Graphics, Inc. v. United States*,
 24 F.3d 1390 (Fed. Cir. 1994)............................................................................. 16

*Sweats Fashion, Inc. v. Pannill Knitting Co.*,
833 F.2d 1560 (Fed. Cir. 1987) .................................................................................. 5

*Texas Apparel Co. v. United States*,
698 F. Supp. 932 (Ct. Int'l Trade 1988) ................................................................... 4
883 F.2d 66 (Fed. Cir. 1989) ..................................................................................... 4

*United States v. Carborundum Co.*,
536 F. 2d 373 (1976) ................................................................................................ 11

*United States v. Simon Saw & Steel Co.*,
51 CCPA 33 (Cust. Ct. 1964) .................................................................................. 17

*Warner-Lambert Co. v. United States*,
407 F.3d 1207 (Fed. Cir. 2005) ................................................................................ 6

**Statutes**

Harmonized Tariff Schedule of the United States
Subheading 9401 ............................................................................................ *passim*
Subheading 9506 ............................................................................................ *passim*

**Rules**

USCIT Rule
30(b)(6) ........................................................................................................ 9, 13, 14
56(a) ...................................................................................................................... 4
56.3 ........................................................................................................................ 1

iv

**Other Authorities**

Balance Ball, U.S. Trademark Reg. No. 2,532,828 (registered Jan. 22, 2002) ............................. 8

Balance Ball, Cambridge Dictionary,
https://dictionary.cambridge.org/dictionary/english/balance ball................................................... 9

Medicine Ball, Merriam-Webster Dictionary,
https://www.merriamwebster.com/dictionary/medicine%20ball .................................................. 9

Explanatory Notes to the Harmonized Commodity Description and Coding System,
EN 95.06(A) (2017 ed.) ................................................................................................................... 8

HQ H193658 (U.S. Customs & Border Prot. July 20, 2015)........................................................ 20

HQ H298524 (U.S. Customs & Border Prot. Apr. 1, 2019) ......................................................... 20

HQ H299274 (U.S. Customs & Border Prot. July 1, 2019)..................................................... 15, 21

NY N009306 (U.S. Customs & Border Prot. Apr, 11, 2007) ....................................................... 20

NY N144757 (U.S. Customs & Border Prot. Feb. 23, 2011) ....................................................... 19

NY N294055 (U.S. Customs & Border Prot. Feb. 27, 2018) ....................................................... 22

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. MARK A. BARNETT, CHIEF JUDGE

```
----------------------------------------------------------------x
FIT FOR LIFE LLC,                            :
                                             :
                         Plaintiff,          :
                                             :
            v.                               :     Court No. 20-00004
                                             :
UNITED STATES,                               :
                                             :
                         Defendant.          :
                                             :
----------------------------------------------------------------x
```

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS CROSS-MOTION FOR
SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

Defendant, the United States (the Government), respectfully submits this memorandum in

support of its cross-motion for summary judgment and in opposition to plaintiff's, Fit For Life

LLC (Fit For Life), motion for summary judgment (Pl. Br.), pursuant to Rule 56 of the Rules of

the United States Court of International Trade (USCIT R.).  For the reasons established below,

the Court should grant summary judgment in favor of the United States because there are no

genuinely disputed issues of material fact and the United States is entitled to judgment as a

matter of law.

**BACKGROUND AND FACTS**

The merchandise at issue in this case consists of a plastic molded frame with four swivel

caster wheels, a back support column, and "a removable, inflatable 52 cm PVC balance ball."

Pl. R. 56.3 Statement ¶ 9.  The product is referred to by the plaintiff as the Gaiam Balance Ball

Chair.  Pl. R. 56.3 Statement ¶ 1, ECF No. 40-1.

On December 12, 2016, the goods at issue were imported under cover of Entry No. 791-0952957-3, made at the port of Cleveland, Ohio.  *Id.* ¶ 1.

On October 27, 2017, United States Customs and Border Protection (CBP or Customs) classified the subject merchandise upon liquidation of the entry at issue in subheading 9506.91.00 of the Harmonized Tariff Schedule of the United States (HTSUS), as articles and equipment for general physical exercise, which is subject to a 4.6 percent *ad valorem* duty rate. *Id.* ¶ 3-4.

On April 24, 2018, Fit For Life timely filed Protest No. 4102-18-100091 challenging liquidation of the entry.  *Id.* ¶ 5.

On July 19, 2019, CBP denied the protest.  Summons, ECF No. 1.

On January 9, 2020, Fit For Life filed its Summons in the instant suit contending that the merchandise is properly classified in subheading 9401.80.40, HTSUS, as a seat, which carries a duty rate of free.  *Id.*

On January 30, 2024, Fit For Life filed its Complaint.  Complaint, ECF No. 16.

On May 16, 2024, the Government filed its Answer.  Answer, ECF No. 20.  The parties thereafter engaged in written fact and expert discovery, as well as depositions.

On May 8, 2026, Fit For Life filed its motion for summary judgment.  ECF No. 40.

The essential question of first impression in this Court is whether the imported merchandise is properly classified as exercise equipment or as a seat.  CBP properly liquidated the merchandise at entry under subheading 9506.91.00, HTSUS, as "Articles and equipment for general physical exercise, gymnastics, athletics, other sports (including table-tennis) or outdoor games, not specified or included elsewhere in this chapter; swimming pools and wading pools; parts and accessories thereof: Other: Articles and equipment for general physical exercise,

2

gymnastics or athletics; parts and accessories thereof." Fit For Life contends, by contrast, that the merchandise is properly classified in subheading 9401.80.40, HTSUS, as "Seats (other than those of heading 9402), whether or not convertible into beds, and parts thereof: Other seats: Of rubber or plastics: Other."

The estimated duty difference in this case is approximately $3,600.

## SUMMARY OF ARGUMENT

The balance ball chair is used primarily as exercise equipment. Customers generally purchase the product to engage their core muscles and perform other exercises while sitting. The product includes an exercise guide (Def. Exhibit A) that shows various exercises that can be performed from a seated position, as well as two exercises that can be performed from a non-seated position. Def.'s 56.3 Statement ¶ 6. For these reasons, and as explained in detail below, the product is properly classified as general exercise equipment of subheading 9506.91.00, HTSUS.

By contrast, Fit For Life argues that because the subject merchandise is generally used in a seated position, the product must be classified as a seat of heading 9401. The fallacy of this argument becomes clear when considering the many types of exercise equipment where the user is in a seated position, including exercise bikes and many types of weightlifting machines that are operated primarily from a seated position.

Accordingly, our cross-motion for summary judgment should be granted, Fit For Life's motion for summary judgment should be denied, and this action should be dismissed.

3

## ARGUMENT

### I.    Standard Of Review

#### A.  Motions for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." USCIT R. 56(a).  "In evaluating a motion for summary judgment, the evidence of the non-movant is to be believed and all justifiable inferences are drawn in favor of the non-movant. This standard is not changed when the parties bring cross-motions for summary judgment, each nonmovant receiving the benefit of favorable inferences."  *Chevron U.S.A. Inc. v. Mobil Producing Texas & New Mexico*, 281 F.3d 1249, 1252–53 (Fed. Cir. 2002) (citation omitted).

On a motion for summary judgment, the court determines whether there are any genuine factual disputes that are material to the resolution of the action.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Texas Apparel Co. v. United States*, 698 F. Supp. 932, 934 (Ct. Int'l Trade 1988), *aff'd*, 883 F.2d 66 (Fed. Cir. 1989), *cert. denied*, 110 S. Ct. 728 (1990) (citations omitted).  A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson*, 477 U.S. at 248.  "The court may not resolve or try factual issues on a motion for summary judgment."  *Phone-Mate, Inc. v. United States*, 690 F. Supp. 1048, 1050 (Ct. Int'l Trade 1988), *aff'd*, 867 F.2d 1404 (Fed. Cir. 1989); *Jayre California, Inc. v. United States*, 14 CIT 29, 32 (1990).

Classification issues may be resolved through summary judgment.  *See Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed. Cir. 1998); *The Pomeroy Collection, Ltd. v. United States*, 246 F. Supp. 2d 1286, 1289 (Ct. Int'l Trade 2002), *aff'd*, 336 F.3d 1370 (Fed. Cir. 2003).  Summary judgment is appropriate when "there is no genuine dispute as to . . . what

4

the merchandise is." *Ero Indus., Inc. v. United States*, 24 CIT 1175, 1179, 118 F. Supp. 2d 1356, 1359 (2000). In the absence of genuine factual issues, whether to grant summary judgment turns on the proper construction of the HTSUS, which is a question of law. *Clarendon Marketing, Inc. v. United States*, 144 F.3d 1464, 1466 (Fed. Cir. 1998).

Here, there are no genuine disputes over material facts for purposes of granting the Government's motion and this case is ripe for summary judgment. *See*, *e.g.*, *Anderson*, 477 U.S. at 247-248; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325-328 (1986); *Sweats Fashion, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562-1563 (Fed. Cir. 1987).

### B. The Standards For Classification

"The tariff classification of merchandise under the HTSUS is governed by the principles set forth in the General Rules of Interpretation ('GRIs')," which are applied seriatim. *Deckers Outdoor Corp. v. United States*, 714 F.3d 1363, 1366 (Fed. Cir. 2013). Determining whether imported merchandise has been properly classified is ultimately a question of law. *Pillowtex Corp. v. United States*, 171 F.3d 1370, 1373 (Fed. Cir. 1999); *Bausch & Lomb*, 148 F.3d at 1365. "Resolution of that issue entails a two-step process: (1) ascertaining the proper meaning of specific terms in the tariff provision; and (2) determining whether the merchandise at issue comes within the description of such terms as properly construed." *Pillowtex*, 171 F.3d at 1373.

The General Rules of Interpretation (GRI) and the Additional United States Rules of Interpretation govern the classification of goods under the HTSUS. *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439 (Fed. Cir. 1998). GRI 1 calls for classification "according to the terms of the headings and any relative section or chapter notes and, provided such headings or notes do not otherwise require, according to the following [GRIs 2 through 6]." *The Pomeroy Collection, Ltd. v. United States*, 559 F. Supp. 2d 1374, 1385 (Ct. Int'l Trade 2008) (emphasis

omitted).  In construing the common meaning of the terms of the tariff, when such terms have

not been defined, "a court may consult dictionaries, scientific authorities, and other reliable

information sources and lexicographic and other materials."  *Rocknel Fastener, Inc. v. United*

*States*, 267 F.3d 1354, 1356-57 (Fed. Cir. 2001) (quotations and citations omitted).

If the goods cannot be classified solely based on GRI 1, and if the headings and legal

notes do not otherwise require, the remaining GRIs must be applied in order.  GRI 2(a) provides

that "[a]ny reference in a heading to an article shall … include a reference to that article …

entered unassembled or disassembled."  The Explanatory Notes (ENs)[1] to GRI 2(a) state that

complete articles entered "unassembled or disassembled are to be classified in the same heading

as the assembled good."  Essentially, GRI 2(a) expands the scope of GRI 1 to cover unassembled

goods.

Moreover, the trial court "must consider whether the government's classification is

correct, both independently and in comparison with the importer's alternative."  *Jarvis Clark Co.*

*v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984).  Although the Court must satisfy itself that

CBP's classification is correct, plaintiff still must provide sufficient evidence to prove that

---

[1]  The ENs, although not binding law, are intended to clarify the scope of tariff provisions, are instructive, and provide useful interpretive guidance for determining the scope of tariff provisions.  *See, e.g. Motorola, Inc. v. United States*, 436 F.3d 1357, 1361 (Fed. Cir. 2006); *Mita Copystar Am. v. United States*, 21 F.3d 1079, 1082 (Fed. Cir. 1994); *Lynteq, Inc. v. United States*, 976 F.2d 693, 699 (Fed. Cir. 1992).  The ENs are the official interpretation of the Harmonized Commodity Description and Coding System (Harmonized Tariff System) at the international level.  The Harmonized Tariff System is the international coding system that formed the basis for the HTSUS, which the United States and its trading partners adopted in its entirety up to the six-digit level.  *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1378 n.1 (Fed. Cir. 1999).  Thus, the ENs are "generally indicative of the proper interpretation of a tariff provision." *Degussa Corp. v. United States*, 508 F.3d 1044, 1047 (Fed. Cir. 2007); *see also Warner-Lambert Co. v. United States*, 407 F.3d 1207, 1209 (Fed. Cir. 2005).

CBP's classification is incorrect. *Jarvis Clark Co. v. United States*, 739 F.2d 628, 630 (Fed. Cir. 1984).

Here, Fit For Life cannot show that CBP's classification of the subject merchandise in heading 9506, HTSUS, is incorrect and that the merchandise should be classified under heading 9401.

## II.    CBP Correctly Classified the Subject Merchandise as General Exercise Equipment

The subject merchandise, a balance ball chair, is properly classifiable as general exercise equipment under subheading 9506.91.00, HTSUS,[2] under GRIs 1 and 2(a).  Because the subject merchandise is disassembled at the time of importation, GRI 2(a) applies and mandates the classification of the merchandise in the same heading as the assembled version of the product. Even if, as discussed further below, the Court finds that the classification of the merchandise cannot be determined based solely on application of GRIs 1 and 2(a), the application of the subsequent GRIs nevertheless leads to the same result.

Under GRI 1, the balance ball chair is properly classifiable under heading 9506, HTSUS, as general exercise equipment.  Moreover, the ENs to heading 9506 state that the heading covers "[a]rticles and equipment for general physical exercise," such as "medicine balls; jump balls with one or more handles designed for physical exercises, … and other exercising apparatus;" among

---

[2]  Subheading 9506.91.00, HTSUS, provides for: "[a]rticles and equipment for general physical exercise, gymnastics, athletics, other sports (including table-tennis) or outdoor games, not specified or included elsewhere in this chapter; swimming pools and wading pools; parts and accessories thereof: [o]ther: [a]rticles and equipment for general physical exercise, gymnastics or athletics; parts and accessories thereof," dutiable at 4.6 percent *ad valorem*.

other items.  World Customs Organization, *Explanatory Notes to the Harmonized Commodity Description and Coding System* EN 95.06(A) (2017 ed.).[3]

The subject merchandise is covered by the term "medicine ball" or "jump ball" in EN 95.06.  In the United States, the term Balance Ball is a genericized trademark associated with the Gaiam brand.[4]  Sequential Holdco LLC, *BALANCE BALL*, United States Patent and Trademark Office, Reg. No. 2,532,828 (Registered Jan. 22, 2002).  Under the U.S. Patent and Trademark Office's classification system, the trademark is classified under Class 028: Toys and Sporting Goods Products, with the description of the item listed as "Exercise Equipment, namely, a large ball used in exercise routines to promote health and fitness."  In common parlance, balance balls are used interchangeably with exercise ball, stability ball, or medicine ball.[5]

---

[3]  EN 95.06(A) provides in full:

(A) Articles and equipment for general physical exercise, gymnastics or athletics, *e.g.*:

Trapeze bars and rings; horizontal and parallel bars; balance beams, vaulting horses; pommel horses; spring boards; climbing ropes and ladders; wall bars; Indian clubs; dumb bells and bar bells; *medicine balls*; *jump balls with one or more handles designed for physical exercises, rowing, cycling and other exercising apparatus*; chest expanders; hand grips; starting blocks; hurdles; jumping stands and standards; vaulting poles; landing pit pads; javelins, discuses, throwing hammers and putting shots; punch balls (speed bags) and punch bags (punching bags); boxing or wrestling rings; assault course climbing walls; skipping ropes designed for sports activities and fitness classes.

(emphasis added).

[4]  Balance Ball is a registered trademark (no. 2,532,828) under the U.S. Patent and Trademark Office, owned by Sequential Holdco LLC.  The trademark assignment records show that it was assigned to Gaiam International, Inc. on July 19, 2001.  Plaintiff Fit For Life produces yoga and wellness-related goods under license for the Gaiam brand.  Thomas J. Ryan, *Sequential Brands Agrees to Sell Active Assets to Galaxy Universal*, SGB Media (Sept. 1, 2021), *available at* https://sgbonline.com/sequential-brands-agrees-to-sell-active-assets-to-galaxy-universal.

[5]  A balance ball is variously known as a birth ball, sitball, body ball, exercise ball, fitness ball, gym ball, gymnastic ball, physio ball, pilates ball, Pezzi ball, stability ball, Swedish ball,

A balance ball is defined as "a large ball for sitting or lying on while exercising." *Balance ball*, Cambridge Dictionary, available at, https://dictionary.cambridge.org/dictionary/english/balance-ball.  This definition is also similar to that of a medicine ball, which is defined as a "a heavy usually large ball used especially in conditioning and strengthening exercises."  *Medicine ball*, Merriam-Webster Dictionary, available at, https://www.merriam-webster.com/dictionary/medicine%20ball.  Thus, medicine balls, balance balls, and exercise balls are essentially interchangeable terms that refer to a category of general exercise equipment consisting of a ball used in exercise routines to promote health and fitness.  To reflect the most common usage, we use the term "balance ball chair" when referring to the subject merchandise, and "exercise ball" when referring specifically to the inflatable ball part of the subject merchandise.

If the Court finds that the terms "medicine ball" or "jump ball" fail to cover the imported product in its entirety, the term "[a]rticles and equipment for general physical exercise," in heading 9506 does.  Heading 9506, HTSUS.  The fact that the exercise ball at issue rests on a frame does not change its function as an article for general physical exercise within the meaning of the heading because, at a minimum, the moment a user sits on the exercise ball, the user is engaging in general physical exercise.  Specifically, as confirmed by Fit For Life's USCIT R. 30(b)(6) witness and Vice President of Operations, the user is engaging in a "powerful core strengthening workout."  George Dep. Tr. at 63:6-10 (Def. Exhibit B).  The plastic frame of the

---

Swiss ball, therapy ball, yoga ball, or medicine ball.  *See Balance ball*, Cambridge Dictionary, https://dictionary.cambridge.org/dictionary/english/balance-ball (balance ball also exercise ball, fitness ball, stability ball, Swiss ball, yoga ball); Tracy Vence, *The Best Exercise Ball*, N.Y. Times, Dec. 16, 2025, *available at* https://www.nytimes.com/wirecutter/reviews/best-exercise-ball/, ("It's a piece of equipment known by many names. Whether you call it a stability ball, a Swiss ball, a yoga ball, or a birthing ball, a quality exercise ball should support the weight of your moving body, retain air, and deflate slowly if punctured.").

product cannot function at all without the exercise ball, but general exercise can be done with the ball in the frame as well as off the frame. The exercise guide shipped with the product shows the user performing nine different stretches and exercises all with the exercise ball inserted into the frame. Gaiam Balance Ball Chair System Exercise Guide (Def. Exhibit A); *see also*, George Decl., Exh. C (ECF No. 40-4 at 13-14). Seven of the exercises shown begin with the user in a sitting position on the balance ball chair. *Id.*

The merchant video featured on the Amazon page of one model of the subject merchandise shows the user performing stretches and exercises with the ball removed from the chair. Def.'s 56.3 Statement ¶ 2. The audio track on the merchant video accompanying the balance ball chair's Amazon page encourages potential customers to:

> Strengthen your core and back with Gaiam's balance ball chair created by leading health and fitness experts. This innovative chair promotes a healthier back, strengthens the core and aligns the spine. The patented design promotes correct posture and improves circulation. The removable 52-centimeter balance ball can also be used as a traditional exercise ball.

Def.'s 56.3 Statement ¶ 3. Accordingly, the balance ball chair is exercising apparatus classifiable under heading 9506.

Heading 9506, HTSUS, is a principal use provision, and it is therefore governed by U.S. Additional Rule of Interpretation 1(a), which provides that: "a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of goods of that class or kind to which the imported goods belong, and the controlling use is the principal use." *Aromont USA, Inc. v. United States*, 671 F.3d 1310, 1312 (Fed. Cir. 2012). "Principal use" is defined as the use "which exceeds any other single use." *Automatic Plastic Molding, Inc., v. United States*, 26 CIT 1201, 1205 (2002). To determine the relevant class or kind to which the imported merchandise

10

belongs, the Federal Circuit applies the seven-factor analysis articulated in *United States v. Carborundum Co.*, 536 F. 2d 373 (1976), *cert. denied*, 429 U.S. 979 (1976) (the Carborundum factors).

### A. Applying The *Carborundum* Factors To The Subject Merchandise Supports Its Classification As Exercise Equipment Of Heading 9506

As detailed below, the application of the seven *Carborundum* factors to the balance ball chair establishes that it is principally used as exercise equipment:

### (1) The General Physical Characteristics Of The Merchandise

The general physical characteristic of the product is an exercise ball sitting in and detachable from a stabilizing frame. The "instability of the [exercise] ball . . . forces your core muscles to work at keeping your balance" while sitting on the exercise ball for long periods of time. George Decl., Exh. H (ECF No. 40-5 at 71). The frame acts as an assistive stabilizer to enable long periods of engaging in exercise. Fit For Life's expert stated that the stabilizing frame helps relieve the "fatigue concerns associated with [sitting on] the unsupported [medicine] ball . . . ." for long periods of time. Frieder Decl. ¶ 13 (ECF No. 40-2). The exercise ball is also used for other exercises, as demonstrated by Fit For Life's Exercise Guide that is included with the product and various customer attestations. *See* Def. Exhibit A. The fact that the ball is removable from the frame, instead of being affixed in it, also demonstrates that exercise of various kinds is the main purpose of the subject merchandise.

Fit For Life's claim that the subject merchandise cannot be used as an exercise ball is easily refuted by its own product advertisement, which states that "[t]he removable 52-centimeter balance ball can also be used as a traditional exercise ball." Def.'s 56.3 Statement ¶ 3. On the contrary, almost all the exercises shown in the Exercise Guide can also be done on the exercise ball, independent of the supporting frame. *See* Def. Exhibit A (included with the

11

merchandise).  By contrast, none of the exercises shown in the Exercise Guide can be done without the exercise ball, *i.e.*, just using the supporting plastic frame.

**(2) The Expectation Of The Ultimate Purchasers**

The expectation of the ultimate purchaser is to sit on the balance ball chair, potentially for long time periods, while activating their core muscles.  One customer has called it "one of the best 'exercise' purchases I have made" and noted she "do[es] not use the seat back at all."[6] Many customers also mention removing the ball from the frame and utilizing it as part of a regular exercise routine.  Even the articles presented by Fit For Life state: "your muscles engage when you are **active sitting** on your ball work chair. This can increase your heartbeat, and it burns a few more extra calories. . . . In addition, it is an easier exercise in comparison to hiking outdoors."  George Decl., Exh. H-5 (Autonomous Article) (ECF No. 40-5 at 87).

Fit For Life attempts to dismiss the exercise aspect of the merchandise and quotes a user review which states, "I've been sitting on it for about a month, and I have now actually just gotten rid of my (not so) old desk chair."  Pl.'s Mot. for Summ. J. at 18.  However, this review does not offer any insight into why that user replaced their desk chair with a balance ball chair. We posit that the primary reason an office worker would replace a standard desk chair with the subject merchandise is for its exercise and resultant wellness benefits.

Supported by its own material, the primary benefit the purchaser expects from the product is exercise of a sustained nature.

---

[6]  Amazon, Gaiam Classic Balance Ball Chair – Ergonomic Stability Chair for Desk & Office | Yoga Ball Seat with Base, Air Pump, & Exercise Guide | Improves Posture & Core Strength (300 lb Capacity), *available at* https://www.amazon.com/Gaiam-Classic-Balance-Ball-Chair/dp/B006FFR37W, reviewed by user: AmazonRocks on Aug. 5, 2017.  Def.'s 56.3 Statement ¶ 1.

**(3) The Channels Of Trade In Which The Merchandise Moves**

First, it appears that the subject merchandise is not presently offered for sale on Walmart.com, and therefore we cannot verify the various claims in Fit For Life's motion regarding the manner in which the subject merchandise is sold on Walmart.com. *See* Pl.'s R. 56.3 Statements nos. 20, 26, 28, and 53 (ECF No. 40-1). Second, Fit For Life's claim that online marketplace categorization of the balance ball chair under "Sports & Outdoors" is in any way "secondary," is incorrect. *See* Pl.'s Mot. for Summ. J. at 20. Currently, on Amazon, the only category in which the subject merchandise is available is Sports & Outdoors : Exercise & Fitness : Accessories : Exercise Balls & Accessories : Exercise Balls.[7] As the largest online marketplace and Fit for Life's top sales channel, Amazon's categorization of the product carries significant weight as objective evidence of the typical channels of trade in which the subject merchandise moves. George Dep. Tr., 48:4-8.

While Fit For Life recognizes in its brief that aggregate marketplaces' product categorization decisions can be "overinclusive and inconsistent" and "attenuated or arbitrary," Pl.'s Mot. at 20 n.2, Fit For Life's own categorization of its product should not suffer from those same ailments. In the Gaiam store, which is the brand's home page on the Amazon marketplace controlled by Fit For Life, the balance ball chair is categorized under "Home Fitness Picks," and

---

[7] Fit For Life's USCIT R. 30(b)(6) witness suggested at deposition that the purple version of the subject merchandise is listed under furniture. George Dep. Tr. at 46:25-47:5. While that may have been true at one time, currently the purple ball is listed under Exercise Balls. *See* Amazon, Gaiam Classic Balance Ball Chair – Ergonomic Stability Chair for Desk & Office | Yoga Ball Seat with Base, Air Pump, & Exercise Guide | Improves Posture & Core Strength (300 lb Capacity), *available at* https://www.amazon.com/Gaiam-Classic-Balance-Ball-Chair/dp/B006FFR37W.

13

displayed alongside yoga mats and blocks.[8]  It is also available under "Active Sitting/Standing"

section, signifying the balance ball chair is intended for something beyond solely sitting.

### (4) The Environment Of Sale (*i.e.*, The Manner In Which The Merchandise Is Advertised And Displayed)

The subject merchandise's Amazon web page is the best evidence of the manner in which

the merchandise is advertised and displayed, since it is Fit For Life's primary sales channel.

Def.'s 56.3 Statement ¶ 7; see also, George Dep. Tr. at 48:4-8 (Def. Exhibit B).  The Amazon

web page shows models using the product in three different contexts.[9]  First, there is a gentleman

in a t-shirt and jeans engaged in a casual telephone conversation while sitting on the balance ball

chair next to a small table.  Second, there is a woman in yoga attire sitting on the ball performing

a vertical *apanasana* (knees-to-chest pose) without leaning on the back rest.  Third, there is a

woman dressed in casual clothes working at a desk, holding a phone with one hand and jotting

down notes on paper with the other.  Therefore, this factor at most establishes that the balance

ball chair is advertised as a versatile product used in multiple contexts, including both fitness and

office environments.

### (5) The Use, If Any, In The Same Manner As Merchandise That Defines The Class

The record in this case establishes that the subject merchandise is used in the same

manner as exercise equipment.  At deposition, Fit For Life's USCIT R. 30(b)(6) witness

confirmed that Fit For Life's marketing material states that "[b]y sitting on the ball, you will

improve your posture and spinal alignment while getting a powerful core strengthening

---

[8]  Amazon, Gaiam: Home Fitness Picks, *available at* https://www.amazon.com/stores/page/B0EBC110-0B3E-4895-A354-6783D86CABE5.

[9]  Amazon, Gaiam Classic Balance Ball Chair – Ergonomic Stability Chair for Desk & Office | Yoga Ball Seat with Base, Air Pump, & Exercise Guide | Improves Posture & Core Strength (300 lb Capacity), *available at* https://www.amazon.com/Gaiam-Classic-Balance-Ball-Chair/dp/B01DUYIOFU (last visited August 3, 2026).  Def.'s 56.3 Statement ¶ 1.

14

workout," George Dep. Tr. at 63:1-5 (Def. Exhibit B).  The Exercise Guide contains "modified yoga poses using the ball as a tool to help deepen your spine stretches."  *Id.* at 32:15-33:16. Accordingly, the subject merchandise is used in the same manner as exercise equipment.  Simply because a user happens to simultaneously do office work does not take away from the product's primary use.

### (6) The Economic Practicality Of The Product

This factor is best explained using an analogy: consider an exercise bike that features both horizontal (flat) handlebars and vertical (drop) handlebars to enhance riders' comfort, and costs more due to the inclusion of dual handlebars.  Such an addition would not affect the HTSUS classification of the exercise equipment.  Similarly, the provision of an extra feature, such as the plastic frame here, which is designed to enhance the user's comfort and prevent fatigue during use does not alter the classification.  Here, the extra cost of the plastic frame is designed to provide essential support for prolonged use of and exercise on the balance ball.  HQ H299274 at 2 (July 1, 2019); *see also* ECF No. 6-1 at 6.  Moreover, a person interested in an office chair would not purchase the subject merchandise unless he or she had a specific goal to engage in core strengthening exercises while sitting, possibly in addition to using the balance ball as exercise equipment independent of the frame.

### (7) The Recognition In The Trade Of This Use

The subject merchandise is recognized in the trade for its simultaneous and overlapping use as exercise equipment that also serves as an alternative to an office chair and is often called "active sitting."

Taken together, the *Carborandum* factors demonstrate that the balance ball chair is properly classifiable as general exercise equipment under heading 9506, HTSUS.

15

**B. Applying GRI 3 In The Alternative, The Balance Ball Chair Is Properly Classified In Heading 9506**

If the Court decides that the classification of the balance ball chair cannot be determined by application of GRI 1, and that it is *prima facie* classifiable under both headings 9401 as a seat and 9506 as equipment for general physical exercise, then GRI 3 governs the classification of the subject merchandise.

**(1) Under GRI 3(a) The Balance Ball Chair Is Properly Classified In Heading 9506**

GRI 3(a) states, in relevant part: "[w]hen . . .  goods are, prima facie, classifiable under two or more headings, classification shall be effected as follows: (a) The heading which provides the most specific description shall be preferred to headings providing a more general description." As discussed below, heading 9506, a principal use provision covering exercise equipment, is more specific than heading 9401, an *eo nomine* provision covering "Seats."

GRI 3(a) is known as the "rule of relative specificity." *See Orlando Food*, 140 F.3d at 1441.  Where articles can be classified under two HTSUS headings, pursuant to GRI 3(a), the classification "turns on which of these two provisions is the more specific." *Id.*  In performing the GRI 3(a) analysis, courts "look to the provision with requirements that are more difficult to satisfy and that describe the article with the greatest degree of accuracy and certainty." *Faus Group, Inc. v. United States*, 581 F.3d 1369 (Fed. Cir. 2009) (quoting *Orlando Food*, 140 F.3d at 1441).  And the general rule of customs jurisprudence is that "in the absence of legislative intent to the contrary, a product described by both a use provision and an *eo nomine* provision is generally more specifically provided under the use provision." *Orlando Food*, 140 F.3d at 1441. This principle is not an ironclad rule of law, but rather "a convenient rule of thumb for resolving issues where the competing provisions are in balance." *See Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1380 (Fed. Cir. 1999) (citing *Sports Graphics, Inc. v. United States*, 24 F.3d 1390,

16

1394 (Fed. Cir. 1994)).  For example, the rule does not apply if the competing *eo nomine* provision is "obviously more specific than the 'use' provision."  *See United States v. Simon Saw & Steel Co.*, 51 CCPA 33, 40-32 (Cust. Ct. 1964).

Here, heading 9401, HTSUS, is an *eo nomine* provision because it describes a commodity, in this case seats, by a specific name that is common in commerce.  *See Nidec Corp. v. United States,* 68 F.3d 1333, 1336 (Fed. Cir. 1995).  Heading 9401 is also extremely generic because it covers a wide variety of seats.  By contrast, heading 9506 is a use provision as it covers goods "for general physical exercise, gymnastics or athletics."  Any product classifiable under heading 9506 must be demonstrably used for one of the enumerated purposes, making it the provision with requirements that are more difficult to satisfy.

A purchaser has up to two potential uses in mind when purchasing the subject merchandise: to engage in core strengthening exercises while sitting and/or to use the balance ball as exercise equipment independent of the frame.  Both are specific instances of engaging in general physical exercise.  Further, applying the "convenient rule of thumb" that use provisions are more specific than *eo nomine* provisions, and because heading 9401 covering "seats" is not obviously more specific than heading 9506 covering "exercise equipment," the latter provides the most specific description of the balance ball chair.  Therefore, by operation of GRI 3(a), the balance ball chair is properly classified in heading 9506, HTSUS.

**(2) Under GRI 3(b) The Balance Ball Chair Is Properly Classified In Heading 9506**

In the alternative, if the Court determines pursuant to GRI 3(a) that headings 9401 and 9506 "each refer to part only of the materials or substances contained in mixed or composite goods or to part only of the items in a set put up for retail sale," the two headings will be regarded as equally specific, "even if one of them gives a more complete or precise description of the goods."  In such a case, GRI 3(b) applies and requires the classification of the merchandise

17

"as if [it] consisted of the material or component which gives [it its] essential character . . . ."[10] As explained below, applying the "essential character" analysis of GRI 3(b), the exercise ball imparts the essential character to the subject merchandise resulting in its classification as exercise equipment under heading 9506, HTSUS.

The essential character of an article is "the component which is indispensable to the structure, core, or condition of the article, *i.e.,* the attribute which strongly marks or serves to distinguish what it is." *Home Depot USA, Inc. v. United States*, 427 F. Supp. 2d 1278, 1293 (Ct. Int'l Trade 2006), *aff'd*, 491 F.3d 1334 (Fed. Cir. 2007) (citing *A.N. Deringer, Inc. v. U.S.*, 66 Cust. Ct. 378, 383 (Cust. Ct. 1971)); *see also Home Depot USA, Inc. v. United States*, 435 F.Supp.3d 1311, 1323 (Ct. Int'l Trade 2020) (containing an illustrative listing of factors that the ENs, CIT and the Federal Circuit have considered in determining the essential character of an article). For the subject merchandise, despite the frame predominating by weight and value, the essential character of the article is imparted by the ball because the frame cannot function without the ball whereas the ball can function without the frame. Specifically, the plastic frame itself is of no use to a potential purchaser without the ball, whereas the exercise ball can be used for general physical exercise both on and off the chair frame. A customer purchases this product because of the various exercise-related benefits provided by the exercise ball, including to "reduce lower back pain and promote upright sitting by strengthening your core muscles" and to "encourage[] subtle micro-movements that keep your body active and alert." George Decl., Exh. D (ECF No. 40-4 at 31, 34). The frame functions primarily as a stabilizer for specific exercises done on the ball, not markedly differently from the steel structure that redirects the

---

[10] Although the analysis is the same whether the balance ball chair is considered a composite good or a retail set, defendant maintains it is a composite good.

18

pulleys and weights of an exercise machine/exercise apparatus.  Thus, under the essential character analysis of GRI 3(b), the subject merchandise is properly classified under heading 9506, HTSUS.

### (3) Under GRI 3(c) The Balance Ball Chair Is Properly Classified In Heading 9506

If the Court finds that neither the exercise ball nor the frame imparts the essential character of the balance ball chair, then, by application of GRI 3(c), the heading occurring last in numerical order, *i.e.* heading 9506, HTSUS, is the correct classification.

### C. The Government's Position is Consistent with Longstanding Administrative Precedent

Since at least 2011, CBP has consistently classified balance ball chairs as exercise equipment under heading 9506, HTSUS.  Set forth below is a brief summary of several CBP rulings, addressed to Fit For Life, regarding the classification of goods substantially similar to the subject merchandise.  Fit For Life's arguments regarding "CBP Precedent," based on a variety of CBP rulings for dissimilar goods, including swing seats and infants' toys, is thus disingenuous.  Pl.'s Mot. for Summ. J. at 13-15.  Similarly, CBP's classification of a Gaiam balance ball *stool* as a seat is inapposite, since the balance ball in the stool was sewn into the frame, and not removable.  *Id.* at 23.  The detachability of the balance ball, and resulting potential use as a stand-alone exercise ball, fundamentally changes the classification analysis of the product, including essential character and customer expectations.

In NY N144757 (February 23, 2011), CBP determined that the Gaiam Custom Fit Balance Ball Chair was classifiable under subheading 9506.91.0030, HTSUS.  The item was described as follows: "[t]he product consists of an exercise balance ball and ergonomic desk chair frame.  The frame portion includes these features: an adjustable narrow cushion back, adjustable legs and lockable castor wheels.  The PVC exercise ball fits securely into the metal

19

frame, forming an ergonomic desk chair.  The ball can be removed and used for exercise purposes, while the desk chair frame cannot function as a chair without the ball.  The retail package will also include a plastic pump and an instructional DVD demonstrating six different exercise routines."

Subsequently, and pursuant to Fit For Life's request for a reconsideration of NY N144757, CBP affirmed NY N144757's classification of the balance ball chair under subheading 9506.91.0030, HTSUS.  HQ H193658 (July 20, 2015).  CBP also reversed NY N009306 (April 11, 2007), where a balance ball chair was found classifiable under subheading 9401.80.4045, HTSUS.  In HQ H193658, CBP applied the GRIs in order, first determining that the balance ball chair was *prima facie* classifiable under both headings 9401 and 9506.  Then, following GRI 3(a)'s rule of relative specificity, and the general rule that a use provision is more specific than an *eo nomine* provision, CBP concluded that the balance ball chair was properly classified under heading 9506, HTSUS.

In HQ H298524 (April 1, 2019), CBP decided that a similar Gaiam Balance Ball Chair model was classifiable under subheading 9506.91.0030, HTSUS.  The item was described as a "disassembled 'balance ball chair' consisting of a deflated exercise ball, a frame, caster wheels, a manual air pump, and a desk guide with stretching exercises."  Applying the GRIs in order, CBP first found that under GRIs 1 and 2(a), the balance ball chair was distinguishable from the types of seats listed under EN 94.01, and the frame was similar to exercise equipment designed to hold an exercise ball.  CBP also noted that, in the alternative, the frame and exercise ball met the definition of a set under GRI 3(b).  With the ball imparting the essential character to the set, the set remained classifiable as "other exercising apparatus" of heading 9506, HTSUS.

20

In response to an Application for Further Review (AFR) on the protest at issue in this case, CBP issued HQ H299274 (July 1, 2019), finding the balance ball chair to be an exercise device under GRIs 1 and 2(a).  It also noted, that in the alternative, the merchandise met the definition of a retail set under GRI 3(b) with the ball imparting the essential character to the set, and the set classifiable as "other exercising apparatus" under heading 9506, HTSUS.

Based on the foregoing, CBP properly classified the subject balance ball chair as exercise equipment under heading 9506.

### III.    The Balance Ball Chair Is Not Classifiable As A Seat Under Heading 9401

Fit For Life asserts that the imported merchandise should be classified as a seat under subheading 9401.80.40, HTSUS.[11]  Pl.'s Mot. for Summ. J. at 9-12.  However, under GRIs 1 and 2(a), the subject merchandise's disassembled frame with an adjustable support bar, secure metal ball holder, castor wheels, deflated ball, manual air pump, and exercise guide is not *prima facie* a "seat" within the meaning of heading 9401, as the disassembled contents do not contain a seat at all.  Once assembled, the apparatus is distinguishable from the seats listed in the Explanatory Notes as examples under EN 94.01[12] (*e.g.*, lounge chairs, arm-chairs, folding chairs,

---

[11]  Subheading 9401.80.40, HTSUS, provides for: "Seats (other than those of heading 9402), whether or not convertible into beds, and parts thereof: Other seats: Of rubber or plastics: Other," duty-free.

[12]  EN 94.01 provides, in relevant part:

> Subject to the exclusions mentioned below, this heading covers all seats (including those for vehicles, provided that they comply with the conditions prescribed in Note 2 to this Chapter), for example:

> Lounge chairs, arm-chairs, folding chairs, deck chairs, infants' high chairs and children's seats designed to be hung on the back of other seats (including vehicle seats), grandfather chairs, benches, couches (including those with electrical heating), settees, sofas, ottomans and the like, stools (such as piano stools, draughtsmen's stools, typists' stools, and dual purpose stool-steps), seats which incorporate a sound system and are suitable for use with video game consoles and

21

deck chairs) which all offer repose, whereas the exercise ball is specifically designated as exercise equipment and does not constitute a seat in the manner of any of the exemplars. World Customs Organization, *Explanatory Notes to the Harmonized Commodity Description and Coding System* EN 94.01 (2017 ed.). Therefore, the subject merchandise is properly described as exercise equipment rather than a seat, with the frame designed to hold the exercise ball after it is inflated.

By comparison, EN 94.01 provides that heading 9401, HTSUS, does not include "[s]tools and foot-stools (whether or not rocking) designed to rest the feet, baby walkers, and linen and similar chests having a *subsidiary use as seats*." (emphasis added). *Id.* Therefore, heading 9401, HTSUS, expressly excludes articles which could have a subsidiary use as seats. For example, a user may sit on a stationary bicycle and even do office work while riding it; however, that does not make the stationary bicycle classifiable as a "seat" under the HTSUS.[13] Because sitting on top of the stationary bicycle is a subsidiary use, and sitting on top of the exercise ball is a subsidiary use, both are *prima facie* not covered by heading 9401, HTSUS.

---

machines, television or satellite receivers, as well as with DVD, music CD, MP3 or video cassette players.

. . .

The heading does not, however, include:

(f) Stools and foot-stools (whether or not rocking) designed to rest the feet, baby walkers, and linen and similar chests having *a subsidiary use as seats*.

(emphasis added).

[13] *See* NY N294055, dated February 27, 2018 (classifying an unassembled aluminum-framed exercise machine with adjustable seat and handlebars in heading 9506, HTSUS, under subheading 9506.91.00, HTSUS, by application of GRI 1 and 2(a)).

Since at least 2011, CBP rulings have consistently found that exercise balls and balance ball chairs (including prior similar models imported by Plaintiff) are correctly classified under heading 9506, HTSUS, which covers articles and equipment for general physical exercise, gymnastics, athletics, etc.

## CONCLUSION

For these reasons, we respectfully request that the Court grant our cross-motion for summary judgment, deny plaintiff's motion for summary judgment, enter judgment in our favor, and dismiss this action in its entirety.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:    /s/ Aimee Lee
       AIMEE LEE
       Assistant Director
       International Trade Field Office

Of Counsel:                              /s/ Guy Eddon
Sohom Datta                              GUY EDDON
Senior Attorney                          Senior Trial Attorney
Office of the Assistant Chief Counsel,   International Trade Field Office
International Trade Litigation            Department of Justice, Civil Division
U.S. Customs and Border Protection       Commercial Litigation Branch
                                         26 Federal Plaza, Room 346
                                         New York, New York 10278
                                         (212) 264-9230 or 9236
                                         *Attorneys for Defendant*

Dated:  August 11, 2026

23

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. MARK A. BARNETT, CHIEF JUDGE

```
-------------------------------------------------------------x
FIT FOR LIFE LLC,                          :
                                           :
                        Plaintiff,         :
                                           :
           v.                              :   Court No. 20-00004
                                           :
UNITED STATES,                             :
                                           :
                        Defendant.         :
                                           :
-------------------------------------------------------------x
```

## CERTIFICATE OF COMPLIANCE

I, GUY EDDON, a senior trial attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the foregoing memorandum in support of defendant's cross-motion for summary judgment and response in opposition to plaintiff's motion for summary judgment, relying upon the word count feature of the word processing program used to prepare the memorandum, certify that this memorandum complies with type-volume limitation under USCIT Standard Chamber Procedure 2(B) and contains 6,936 words.

/s/ Guy Eddon
Guy Eddon