UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. MARK A. BARNETT, CHIEF JUDGE

| | | |
|---|---|---|
| FIT FOR LIFE, LLC | : | |
| Plaintiff, | : | Court No. 20-00004 |
| v. | : | |
| UNITED STATES, | : | |
| Defendant. | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP
*Attorneys for Plaintiff*
599 Lexington Avenue, FL 36
New York, New York 10022
(212) 557-4000
Robert B. Silverman
Sarah E. Raymond

Dated: October 15, 2026
New York, New York

TABLE OF CONTENTS

INTRODUCTION ........ 1
SUMMARY OF ARGUMENT ........ 2
ARGUMENT ........ 3
I. General Rule of Interpretation 1 Directs Classification of the CBBCs under Heading 9401, HTSUS. ........ 3
II. Chapter 9506 does not Describe the CBBC as Assembled and Imported. ........ 5
III. Defendant Misapplies the Carborundum Factors to the Facts of the Case. ........ 8
A. The General Physical Characteristics of the Merchandise ........ 8
B. The Expectation of the Ultimate Purchasers ........ 10
C. The Channels of Trade in which the Merchandise Moves ........ 11
D. Environment of Sale ........ 11
E. Use in the Same Manner as Merchandise that Defines the Class ........ 12
F. Economic Practicality ........ 13
G. Recognition in the Trade ........ 13
IV. GRI 3 is Inapplicable and the CBBC is Properly Classified under Heading 9401, HTSUS. ........ 14
V. The Standard of Review is De Novo and Administrative History is Not Entitled to Deference. ........ 14
VI. Defendant Misconstrues EN 94.01 Exclusion. ........ 15
CONCLUSION ........ 16

# TABLE OF AUTHORITIES

Cases

*Aromont USA, Inc. v. United States*, 671 F.3d 1310, 1312 (Fed. Cir. 2012)................................ 12
*Avenues in Leather, Inc. v. United States,* 178 F.3d 1241, 1244 (Fed.Cir.1999) ........................... 4
*CamelBak Products, LLC v. United States,* 649 F.3d 1361, 1364 (Fed.Cir. 2011) ....................... 14
*Kahrs Int'l., Inc. v. United States*, 713 F.3d 640, 644 (Fed. Cir. 2013) ....................................... 15
*Mast Industries, Inc. v. United States*, 9 CIT 549, 551 (1985), aff'd, 786 F.2d 1144 (Fed. Cir. 1986) ........................................................................................................................ 8
*Pomeroy Collection, Inc. v. United States,* 26 CIT 624, 627 (2002) ............................................ 14
*Primal Lite, Inc. v. United States*, 182 F.3d 1362, 1364 (Fed. Cir. 1999) ..................................... 8
*Telebrands Corp v. United States,* 36 CIT 1231, 865 F.Supp.2d 1277, 1281 (2012).................. 15
*Totes, Inc. v. United States,* 69 F.3d 495, 498 (Fed.Cir.1995)......................................................... 4
*United States v. Carborundum Co.,* 536 F.2d 373 (CCPA 1976)................................................... 9
*United States v. Mead Corp.,* 533 U.S. 218, 235, 121 S.Ct. 2164 (2001) .................................. 15
*Warner–Lambert Co. v. United States*, 407 F.3d 1207, 1209 (Fed. Cir. 2005)........................... 15

Court Rules

U.S. Court of International Trade (“USCIT”) Rule 56(a) ............................................................ 2

Administrative Materials

*Physical Activity Guidelines for Americans*, 2nd ed. (2018) .......................................................... 6

Customs Rulings

HQ 966973 (May 10, 2004)......................................................................................... 6, 15
HQ H313575 (Mar. 26, 2021)...................................................................................... 16
NY N074173 (Sept. 25, 2009) ..................................................................................... 16
NY N320579 (July 27, 2021)..................................................................................... 7, 15
NY N346641 (March 25, 2025).................................................................................. 7, 15

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. MARK A. BARNETT, CHIEF JUDGE

| | | |
|---|---|---|
| FIT FOR LIFE, LLC<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | : | Court No. 20-00004 |

**PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

This case concerns the tariff classification of Fit For Life, LLC. ("Plaintiff") classic balance ball chairs (the "CBBC") under the Harmonized Tariff Schedule of the United States ("HTSUS"). Plaintiff respectfully submits this reply brief in response to defendant's opposition to plaintiff's motion to summary judgment and in response to defendant's Cross-Motion for Summary Judgment. ECF No. 43 ("Def. SJ Mot.").

The parties appear to agree that this case can be resolved by means of summary judgment. The parties also agree that the threshold question in this case is whether the subject merchandise, the CBBC, is properly classified under heading 9401, HTSUS, as "[s]eats," or under heading 9506, HTSUS, which provides for, in relevant part, "[a]rticles and equipment for general physical exercise."

As a preliminary matter, plaintiff petitions this Court to accept all facts on the record that have not been contested by the defendant as true. A grant of summary judgment is appropriate

when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." U.S. Court of International Trade ("USCIT") Rule 56(a). The material facts regarding the physical characteristics of the subject merchandise are not contested. Accordingly, what remains is for the Court to determine whether plaintiff is entitled to judgment as a matter of law. The classification question before the Court is a question of law, namely, whether the subject merchandise is classified in heading 9401, HTSUS, or in heading 9506, HTSUS.

As a matter of law, the plaintiff's CBBC cannot be classified under heading 9506, HTSUS. The CBBC is not an article of general exercise and should not interpreted as such by this Court. Since the CBBC is imported as a seat, marketed as a seat, and used as a seat by plaintiff's customers, heading 9401, HTSUS, applies. Plaintiff opposes defendant's cross-motion for summary judgment and moves for summary judgment holding that the CBBC is classifiable under subheading 9401.80.40, HTSUS.

## SUMMARY OF ARGUMENT

In Defendant's Cross-Motion and Reply to Plaintiff's Motion for Summary Judgment, defendant has focused on a singular component of the disassembled chair, the balance ball, in an attempt to convince the Court that heading 9506, HTSUS, applies. There is no dispute that the General Rules of Interpretation (GRI) apply to the proper classification of the subject merchandise. However, it is clear from GRI 1 and 2(a) that the CBBC, as assembled, is *prima facie* classifiable under heading 9401, HTSUS.

Defendant focuses on hypothetical, post-sale use of the CBBC as exercise equipment rather than the use of the article as imported. However, U.S. Additional Rule of Interpretation

("ARI") 1(a) directs that classification should be controlled by an article's ordinary use at the time of importation, not by an ancillary benefit that the article may provide the user.

Defendant's arguments contravene the ample evidence that demonstrates that the assembled product, the CBBCs, are principally used as seating. Therefore, defendant's proposed classification under heading 9506, HTSUS, is unsupported in law and in fact. Instead, the CBBCs are properly classified under heading 9401, HTSUS, in accordance with their principal use as seating in homes, offices, and schools.

## ARGUMENT

### I. General Rule of Interpretation 1 Directs Classification of the CBBCs under Heading 9401, HTSUS.

Defendant correctly states that merchandise imported into the United States is classified under the HTSUS and that classification is governed by the General Rules of Interpretation (GRIs). GRI 2(a) directs that classification of merchandise that is disassembled at the time of importation be classified in the same heading as the assembled version. Defendant acknowledges the applicability of GRI 2(a): "because the merchandise is disassembled at the time of importation, GRI 2(a) applies and mandates the classification of the *merchandise in the same heading as the assembled version of the product.*" Def. SJ Mot. at 7 (emphasis added).

However, defendant then misapplies GRI 2(a) by focusing solely on one component, the balance ball, and not on the assembled chair. In this case, the fully assembled product would be the CBBC, not a standalone balance ball.

Defendant roots nearly all of its arguments in this concept, citing to the standalone balance ball as if it were the merchandise at issue. Defendant attempts to argue that the CBBCs are not chairs because the balance ball is a "medicine ball" or "jump ball with one or more handles designed for physical exercises…," which are referred to in the Explanatory Notes (EN)

to heading 9506, HTSUS. *Explanatory Notes to the Harmonized Commodity Description and Coding System* EN 95.06 (A).

Plaintiff disputes that the article is a "medicine ball" or a "jump ball." First, the premise is incorrect – defendant is attempting to compare the balance ball; *i.e.*, a singular component of the CBBC, to the merchandise enumerated in EN 95.06 (A). Second, the subject merchandise is neither a "medicine ball" nor a "jump ball." A "jump ball" as defined in the EN, must have "one or more handles designed for physical exercise." A "medicine ball" is a "heavy, usually large ball used especially for conditioning and strengthening exercises."[1]. Definitionally, neither a medicine ball nor a jump ball is comparable to the CBBC.

EN 95.06 (A) to heading 9506, HTSUS, lists various exercise equipment,[2] and follows the list with "and other exercising apparatus." *Ejusdem generis* governs the phrase "other exercising apparatus" as detailed in the EN. Under this principle, merchandise that possess the "same essential characteristics or purposes that unite the listed examples preceding the general term or phrase" are classified within that heading. *Avenues in Leather, Inc. v. United States,* 178 F.3d 1241, 1244 (Fed.Cir.1999) (citing *Totes, Inc. v. United States,* 69 F.3d 495, 498 (Fed.Cir.1995)). Defendant's argument seems to compare the balance ball alone to these enumerations. The fatal flaw in defendant's argument is that the chair, reviewed as fully constructed as GRI 2(a) requires, is akin to none of the examples. Regardless, these items are typically found in a gym, whether it be a home or commercial gym. There is no evidence the

[1] "Medicine ball," *Merriam-Webster.com Dictionary*, https://www.merriam-webster.com/dictionary/medicine%20ball. Accessed 9/29/2026.

[2] "Trapeze bars and rings; horizontal and parallel bars; balance beams, vaulting horses; pommel horses; spring boards; climbing ropes and ladders; wall bars; Indian clubs; dumb bells and bar bells; medicine balls; jump balls with one or more handles designed for physical exercises, rowing, cycling…." EN 95.06(A).

CBBCs are used in a gym. Therefore, the Explanatory Notes do not direct classification of the CBBC under heading 9506, HTSUS.

Defendant further confuses matters by stating that Gaiam International, Inc. holds a trademark from the United States Patent and Trademark Office (USPTO) to the term "Balance Ball™." The subject merchandise is a CBBC, not a balance ball; it is therefore unclear how this fact is determinative of classification. This argument is moot because the trademark is also included in the "High-Rise Balance Ball™ Stool," which U.S. Customs and Border Protection ("CBP") classifies under heading 9401, HTSUS, as a seat. George Declaration ¶ 32, ECF No. 40-5, Ex. G. If a trademark were indicative of classification, the High-Rise Balance Ball Stool would not have been classified by CBP under heading 9401 as a seat. Again, defendant's arguments ignore the well-established fact that the balance ball is just one component of the assembled chair, namely the seating area. Defendant fails to address how under GRI 1 and 2(a), the assembled chair would be classifiable under heading 9506, HTSUS. Under GRI 1 and 2(a), because the article is a seat (with its seating area, backrest, chair frame, casters and support bar), it is *prima facie* classifiable under heading 9401, HTSUS.

II. Chapter 9506 does not Describe the CBBC as Assembled and Imported.

Defendant asserts that if someone is using the CBBC, they are necessarily engaging in exercise. However, defendant's argument erroneously presumes that the chair should be classified under heading 9506 because "the moment a user sits on the exercise ball, the user is engaging in general physical exercise." Def. SJ Mot. at 9. Plaintiff has found no definition that describes the type of passive postural engagement that the CBBC facilitates. The U.S. Department of Health and Human Services ("HHS") states in its report, *Physical Activity*

*Guidelines for Americans*, 2nd ed. (2018),[3] that exercise is, "a form of physical activity that is *planned*, *structured*, *repetitive* and performed with the goal of improving health or fitness" (emphasis added). Sitting in the CBBC is not structured or repetitive. Engaging the core muscles is a potentially passive benefit from sitting in one of these chairs.

Further, HHS notes that, "although all exercise is physical activity, *not all physical activity is exercise.*" *Id.* (emphasis added). The report discusses, for example, muscle-strengthening activities and balance activities as forms of physical activity, but not as exercise. *Id.* Encyclopedia Britannica similarly states that exercise is merely a "component of physical activity."[4]

Encyclopedia Britannica defines exercise as a "structured activity specifically planned to develop and maintain physical fitness." *Id.* Here, sitting on the CBBC is not a structured activity designed to maintain physical fitness. A secondary benefit of marginally increased core strength by sitting in a chair is not within any of the definitions of exercise.

There are CBP rulings that analyze whether particular goods constitute exercise within the meaning of heading 9506, HTSUS. In one such ruling, CBP determined that "Fast Abs," a machine designed to help develop abdominal strength through battery-operated muscle stimulation, was not an article for general physical exercise under Chapter 9506. HQ 966973 (May 10, 2004). CBP modified its original ruling in NY H86520 which classified the "Fast Abs" under heading 9506, HTSUS. In its modification, CBP determined that "applying electrical stimulus to the abdominals" is not "general physical exercise." *Id.* CBP looked to the American Heritage Dictionary of the English Language, which defines "exercise" as "[a]ctivity that

[3] *Physical Activity Guide for Americans,* 2nd ed. (2018), https://www.cdc.gov/physical-activity/media/pdfs/Physical_Activity_Guidelines_2nd_edition.pdf.
[4] Kenneth H. Cooper, *Exercise,* Encyclopedia Britannica, https://www.britannica.com/topic/exercise-physical-fitness (last visited Oct. 10, 2026).

requires physical or mental exertion, especially when performed to develop or maintain fitness: took an hour of vigorous daily exercise at a gym." CBP also cited Cambridge Dictionary, which defines exercise as "physical activity that you do to make your body strong and healthy: She exercises most evenings usually by running…" Using these definitions of exercise, the "Fast Abs" system was deemed to not be suitable for classification as exercise equipment. The ruling concluded that "we believe that no real physical activity is involved in using the 'Fast Abs.' It is a self-operating device. The use of the Fast Abs attaches the belt around his waist and electrical impulses are transmitted to the abdominal muscles to stimulate them…other than attaching the belt and turning it on, the user does not engage in any other physical movement. Significantly, the Fast Abs is designed for people who want the results of exercising without having to engage in exercise activity."

It could be said that the CBBC is similarly designed for people who want to sit in a chair and experience some measure of the results of exercising without having to engage in exercise activity. The CBBC, which passively engages muscles, is not "exercise." Sitting in a CBBC is not a "physical activity to make your body strong or healthy," nor is it "an activity that requires… physical exertion."

Standing desks are akin to the CBBC in that a user may reap secondary physical benefits while working. Although standing engages your muscles while working, CBP classified standing or adjustable-height desks as furniture, not as as articles of general exercise. NY N346641 (March 25, 2025). Further, CBP found that an outdoor swing seat was not classified under Chapter 9506 because it does not "provide the user with meaningful exercise and a reasonable degree of physical activity." NY N320579 (July 27, 2021). The CBBCs are similar in that they

are designed as a seat and are not meant for meaningful exercise or physical activity within the definition of "exercise."

Defendant argues that the balance ball component of the chair can be removed and used for exercise. Def. SJ Mot. at 10. However, the CBBC is not meant to be used without the frame. Articles are classified by the use for which they are "designed, manufactured and marketed." *Mast Industries, Inc. v. United States*, 9 CIT 549, 551 (1985), aff'd, 786 F.2d 1144 (Fed. Cir. 1986). "Principal use provisions classify merchandise by its ordinary use even though particular goods may be put to some atypical use." *Primal Lite, Inc. v. United States*, 182 F.3d 1362, 1364 (Fed. Cir. 1999). The CBBC's ordinary use is as a chair. The fact that it can be used in other ways is not determinative of its classification under the principal use provision.

Consumers would have no reason to use the balance ball outside of the frame. The balance ball used on the CBBC is smaller than a standalone balance ball because it's specifically designed for use in the CBBC as a seat. Geroge Declaration ¶ 9; ECF No. 43-4, George Dep. 36:18-22. If a consumer wanted a balance ball for exercise, they could purchase a stand-alone balance ball for $10-$20, as opposed to the CBBC which costs $60-$70. George Declaration ¶ 23. The CBBC was designed with all the elements of a chair: a seat, backrest, locking caster wheels, and a supporting frame. George Declaration ¶¶ 8,15.

III. <u>Defendant Misapplies the Carborundum Factors to the Facts of the Case.</u>

Defendant misapplies the seven *Carborundum*[5] factors to the facts of this case as follows:

A. <u>The General Physical Characteristics of the Merchandise</u>

Throughout its *Carborundum* analysis, defendant's arguments vacillate between analyses of the CBBC as disassembled and as assembled when germane to its argument. When arguing

[5] *United States v. Carborundum Co.,* 536 F.2d 373 (CCPA 1976).

the "general physical characteristics" factor, defendant chooses to describe the CBBC as disassembled. Defendant points to the fact that the balance ball can come out of the chair frame. Def. SJ Mot. at 11. However, this argument plainly ignores the proposition in GRI 2(a) that articles that are disassembled at the time of importation are classified as assembled. The CBBC, as assembled, has the general physical characteristics of a chair: a seat, backrest, locking caster wheels, and a supporting frame. George Declaration ¶¶ 8,15. It is designed specifically to fit under a desk so that a customer can use it while working. *Id.* ¶ 10. Defendant's assertion that the exercise ball is removable is therefore of no importance to classification because GRIs dictate that it is to be classified as assembled, and its physical characteristics as assembled have the general physical characteristics of a chair.

Additionally, as stated in Plaintiff's Motion for Summary Judgment, the CBBC is patented as a "Ball Chair."[6] *Id.* ¶ 12 & ECF No. 40-4, Ex. B. The CBBC is categorized under the USPTO's Classification Class 297 (Chairs and Seats), Subclass 452.41, and under Cooperative Patent Classification A47C 7/02 (Chairs). *Id.* ¶¶ 12, 14. The patent specifically describes the CBBC's physical design elements in reference to the product's use as a chair. *Id.* ¶¶ 15, 16. The specification for the patent states "when a user sits on the ball chair, the ball-shaped cushion…is pressed to deform and biased to the front edge of the seat," and the guard rod "stops the ball-shaped cushion…from further deforming to avoid the malpositioning of the ball-shaped cushion…, which may otherwise cause the user to fall from the ball chair." *Id.* ¶ 15. The patent shows that the CBBC contains the structural components of a chair, including a molded plastic chair frame, backrest, locking casters, height-adjustable legs, and a guard rod. ECF No. 40-3,

[6] United States Patent No. 6,832,817.

George Declaration ¶15, 20. Therefore, it is clear from these physical characteristics and from the ultimate design of the CBBC that it was intended for use as a chair.

B. The Expectation of the Ultimate Purchasers

Defendant argues that the expectation of the customer is to use the CBBC as a piece of exercise equipment. Defendant states that "[m]any customers also mention removing the ball from the frame and utilizing it as a part of a regular exercise routine" and yet it fails to cite to a single example of this.

Defendant cites to one customer saying it was the "best 'exercise' purchase I have made." Def. SJ Mot. at 12. The term exercise in that review was in quotes, presumably to show that the reviewer really did not believe it was actual exercise. Defendant completely ignores the vast majority of reviews from users who have purchased the CBBC and state that the product is a chair and is used as such. Defendant does not point to one review that states customers use the CBBCs as exercise equipment.

In reviews on Amazon.com, images show that the CBBC is situated under desks in the place of a chair. *Id.* ¶ 31 & ECF No. 40-5, Ex. E. Additionally, reviews consistently refer to the CBBCs as seating:

> "Comfortable Ball Chair… great ***replacement for a traditional office chair***…great height for our desk and the back support is nice…"
>
> "Great Chair…I purchased this ***chair*** because I have lower back pain…Almost 2 years now since I ***bought*** this chair and I still sit on it every day."
>
> "A great ***alternative to a standard chair***…I love my ball chair, and am thrilled I was allowed to ***get one for the office***. You likely won't lose weight if your only change is sitting on a ball chair."

> "I ordered this for my 8 year old to be more comfortable ***during virtual school***…it allows her to reach her standard sized desk easily… I love that she can sit up better and bounce a little if needed."

(emphasis added). *Id.*

It is clear from the reviews that the customer expects a chair. One user even warns others not to expect any physical benefits ("[y]ou likely won't lose weight if your only change is sitting on a ball chair"). They are not buying the product to perform exercises or to improve their strength or fitness. They are buying the CBBCs for their intended purpose, as an alternative to a standard chair.

C. The Channels of Trade in which the Merchandise Moves

ARI 1(a) provides for classification "in accordance with the use in the United State at, or immediately prior to, the date of importation…" Here, the record shows that even where the CBBC appears in multiple online categories, it is simultaneously identified as office seating. While at the time of filing this response, Walmart no longer carries the CBBCs, Walmart carried them at the time of entry. As indicated in Plaintiff's Motion for Summary Judgment, Walmart carried the CBBCs as "office furniture" and displayed the CBBC alongside other office chairs. ECF no. 40-1, Plaintiff Statement of Material Facts ("SMF") ¶ 26; ECF No. 40-4, Ex. D. Office Depot also displays the CBBCs with other office chairs. *Id.* ¶29; *Id.* Ex D. While Amazon does list the CBBC under the "Sports & Outdoors" category, Amazon dually categorized the CBBCs as a "Home Office Chair." *Id.* ¶ 25 & *Id.* Ex. D.

D. Environment of Sale

Defendant admits that the Amazon page is the best evidence of how the merchandise is advertised, and then effectively concedes the "environment of sale" factor in plaintiffs favor. Principal use is the use that "exceeds any other single use." *Aromont USA, Inc. v. United States*,

671 F.3d 1310, 1312 (Fed. Cir. 2012). By defendant's own description, two of the three images show the product used as a seat, and only one shows exercise. Showing that a product has more than one use does not answer which use is principal. Heading 9506 requires that exercise be the principal use. On this factor, seating exceeds exercise (two photos to one), so the factor favors plaintiff.

E. Use in the Same Manner as Merchandise that Defines the Class

Defendant asserts that the record establishes that the CBBC is used in the same manner as exercise equipment. Defendant completely ignores that CBBCs are not found in locations where one would find exercise equipment; i.e., in gyms. The CBBC are used at "schools, home offices, government offices, as well as office buildings." George Dep. at 63:22-23. In schools, they are "set at tables for the children to use." *Id.* at 64:1-2. Plaintiff has also donated CBBCs to be used in the classroom, for students and teachers. *Id.* at 64:2-4. The Stanford Study also tested the chair in a workplace setting where the participants performed their ordinary work duties, highlighting that the typical use of the CBBC is as a chair. George Declaration ¶ 30; ECF No. 40-5, Ex. F.

An ancillary benefit is not a principal use. A standing desk may improve posture and strengthen core muscles, but it is still a desk. Likewise, any posture or core benefit from the CBBCs is incidental to their use as seats. Nor does the ability to exercise on a CBBC make it exercise equipment. A person can stretch in any chair, and numerous articles describe exercises to be performed in an ordinary chair.[7]

However, any added benefits from stretching or moving on the chair are secondary. This is further supported by the declaration of Dr. Larry Frieder, D.C. who stated in his report that the

[7] 15 Best Chair Exercises for Full-Body Strength and Mobility Workout; Five stretches you can do at your chair to reduce muscle tension.

"Balance Chair is an excellent choice for use as an office chair" and that "any stretching or balancing exercises that can be performed while suing the chair are *insignificant* compared to its main purpose for use as an office chair" (emphasis added). SMF ¶ 46; ECF No. 40-2, Frieder Declaration ¶ 14, Ex. B. All evidence points to the CBBC being primarily used, like other chairs, as seating.

F. <u>Economic Practicality</u>

Defendant compares the CBBC's frame to a second set of handlebars on an exercise bike: an add-on that provides comfort but does not change the product. Def. SJ Mot. at 15. The comparison fails. A bike with extra handlebars is still a bike and is used the same way. The CBBC's frame, backrest, and caster wheels fundamentally change what the product is. They turn a ball into a chair that can be used at a desk, and every feature is necessary to its function as a chair. George Decl. ¶ 15.

The pricing confirms this point. Customers pay $60-$70 for a CBBC whereas the standalone balance ball costs $10-$20. Id. ¶ 23. A customer who wanted exercise equipment would buy the ball alone for less. The premium is paid for the chair.

Defendant's own argument supports this conclusion. Defendant states that a person "interested in an office chair" would buy the CBBC to strengthen the core "while sitting." Def. SJ Mot. at 15. A chair with a posture benefit is still a chair.

G. <u>Recognition in the Trade</u>

Defendant states that the CBBC is recognized in the trade for its simultaneous and overlapping use as an office chair and is exercise equipment. Def. SJ Mot. at 15. However, Defendant points to no evidence that supports its position that the CBBCs are recognized as anything other than a chair.

Therefore, defendant's arguments on based the *Carborandum* factors do not support classification under heading 9506, HTSUS. Rather, the factors support the CBBCs proper classification under heading 9401, HTSUS.

IV. GRI 3 is Inapplicable and the CBBC is Properly Classified under Heading 9401, HTSUS.

While defendant provides an analysis under GRI 3(a) and (b), the Court can resolve the classification of the CBBCs under GRI 1. "The proper classification of all merchandise is governed by the [GRIs], which provide a framework for classification under the HTSUS, and are to be applied in numerical order." *Pomeroy Collection, Inc. v. United States,* 26 CIT 624, 627 (2002). When the Court "appl[ies] GRI 1 as a substantive rule of interpretation, such that when an imported article is described in whole by a single classification heading or subheading, then that single classification applies, and the succeeding GRIs are inoperative." *CamelBak Products, LLC v. United States,* 649 F.3d 1361, 1364 (Fed.Cir. 2011). Additionally, the "HTSUS is designed so that most classification questions can be answered by GRI 1, so that there would be no need to delve into the less precise inquiries presented by GRI 3." *Telebrands Corp v. United States,* 36 CIT 1231, 865 F.Supp.2d 1277, 1281 (2012). As it has been established that the principal use of the CBBCs are as chairs, GRI 1 dictates that it should be classified as such. There is no need to delve into the "less precise inquires" of GRI 3. Since the CBBCs are *prima facie* classifiable under heading 9401, HTSUS, further analysis is not required.

V. The Standard of Review is De Novo and Administrative History is Not Entitled to Deference.

Defendant cites to "longstanding administrative precedent" for classifying CBBCs under heading 9401, HTSUS. However, defendant has cited to rulings issued to plaintiff on the classification of the CBBCs. "While [the Court] accord[s] deference to a classification ruling by Customs relative to its 'power to persuade,' [the Court has] 'an independent responsibility to

decide the legal issue of the proper meaning and scope of HTSUS terms." *Kahrs Int'l., Inc. v. United States*, 713 F.3d 640, 644 (Fed. Cir. 2013) (quoting *United States v. Mead Corp.,* 533 U.S. 218, 235, 121 S.Ct. 2164 (2001); *Warner–Lambert Co. v. United States*, 407 F.3d 1207, 1209 (Fed. Cir. 2005). However, the Court's review of classification cases is limited to the record before the court. 28 U.S.C. § 2640(a).

The CBP rulings on plaintiff's CBBC are inconsistent with rulings on other similar goods. As stated above, a Fast Ab machine designed to improve abs was found by CBP to be not properly classified under heading 9506, HTSUS, even though it was designed to strengthen core muscles. HQ 966973 (May 10, 2004). Another CBP ruling states that a swinging seat is not classifiable under heading 9506, HTSUS, even though you engage your muscles as you swing on the seat. NY N320579 (July 27, 2021). An adjustable height desk was not found to be classifiable under heading 9506, HTSUS, even though you engage your core muscles by standing. NY N346641 (March 25, 2025). The record before the Court gives ample reason to find that the classification ruling by CBP is not persuasive as it is contrary to other similar rulings and should not be afforded any deference.

VI. Defendant Misconstrues EN 94.01 Exclusion.

Defendant's conclusory statement that the CBBCs were designed as exercise equipment is misleading. It disregards the deposition testimony of Ms. George, who explicitly stated when asked by defendant what the product was designed to do: "it was always designed to be used in an office, school, at your desk…as alternative seating." George Dep. 65: 16-23.

Defendant also misreads EN 94.01. EN 94.01 states that heading 9401, HTSUS, excludes certain items that have "subsidiary use as seats," such as "foot-stools designed to rest the feet, baby walkers, and linen and similar chests." Each has a clear primary function other

than seating: resting the feet, helping a child walk, or storage, respectively. The CBBC is unlike any of the articles described in the exclusionary list. Here, the CBBCs does not have subsidiary use as a seat. It was designed as a seat. George Declaration ¶ 16.

Defendant's stationary bicycle example shows the difference. The seat on a stationary bicycle exists so that the user can pedal. No one buys a stationary bicycle to sit at a desk. The CBBC was designed for that purpose – to sit at a desk. George Dep. 65:16-23.

Further, defendant's narrow interpretation of EN 94.01 would exclude many articles that have been classified by CBP as "seating" under heading 9401, HTSUS, such as a motorized reclining massage chair (HQ H313575 (Mar. 26, 2021)) and bouncing and swiveling infant seats. NY N074173 (Sept. 25, 2009). Both rulings demonstrate that chairs that are classifiable under heading, HTSUS, can have additional features and benefits, yet still be classified as seats.

Defendant argues that the CBBC is distinguishable from the seats listed in EN 94.01, such as lounge chairs, arm-chairs, folding chairs, and deck chairs, because those seats "all offer repose." Def. SJ Mot. at 22. Heading 9401 is not limited to seats that offer repose. That requirement does not appear in the heading or in EN 94.01, which states that the heading covers "all seats." Defendant relies on four examples from the EN and ignores the rest. The same list includes piano stools, draughtsmen's stools, and typists' stools, which are seats for working, not resting. Most importantly, the list is introduced with "for example" and is not exhaustive.

The CBBCs are of a similar kind to the exemplars of EN 94.01, if not directly mentioned. Therefore, the subject merchandise is correctly classifiable under heading 9401, HTSUS.

CONCLUSION

There are no disputed material facts in this case. CBBCs are classifiable as seats of subheading 9401.80.40, HTSUS. For the foregoing reasons, plaintiff respectfully requests that

the Court grant its motion for summary judgment and order CBP to reliquidate the subject entries with classification of the subject merchandise under subheading 9401.80.40, HTSUS, and to refund the excess duties paid with interest as provided by law.

Respectfully submitted,

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP
*Attorneys for Plaintiff*
599 Lexington Avenue, FL 36
New York, New York 10022
Tel. (212) 557-4000
SRaymond@gdlsk.com

/s/ Sarah E. Raymond
Robert B. Silverman
Sarah E. Raymond

Dated: October 15, 2026
New York, New York

## CERTIFICATE OF COMPLIANCE

Pursuant to USCIT Standard Chambers Procedures Rule 2(B), I hereby certify that the foregoing brief complies with the Rules of this Court in that it contains 4,909 words including text, headings, footnotes, and quotations. This word count is within the limit of 7,000 words set forth in Rule 2(B).

/s/ Sarah E. Raymond
Sarah E. Raymond

Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP
599 Lexington Ave., FL 36
New York, New York 10022

Dated: October 15, 2026
New York, New York